## Penn

*v.*

## Chesapeake & O. Ry. Co.

(*Supreme Court of Appeals of Virginia, Sept. 26, 1895.*)

[23 S. E. Rep. 3.]

**Partition Sale—Sale of Water Rights—Breach of Covenant—Case at Bar.**

Plaintiff became purchaser at a sale, under order of court, of the share of one coparcener after partition. The decree of partition was silent as to any claim against the share of such coparcener in favor of the other coparceners, and plaintiff's deed contained no reservation in their favor. Plaintiff thereafter sold to defendant certain water rights situated on the property: *held*, that a decree in a subsequent action, allowing the other coparceners a proportional share in such water rights, should be set aside, and defendant restrained from prosecuting an action based on such decree, for breach of covenant by plaintiff.

**Same—Final Judgment—Limitations.**

A decree recited that the case be recommitted to a commissioner to "report an account," and subsequently a decree was entered dismissing the complaint: *held*, that the former decree was not a final judgment which would start the running of the statute of limitations.

Appeal from circuit court, Botetourt county ; H. E. Blair, Judge.

Action by Martha D. Penn against the Chesapeake & Ohio Railway Company for an injunction, and to set aside judgment. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

*Benj. Haden,* for appellant.

*R. L. Parrish* and *W. J. Robertson*, for appellee.

KEITH, P., delivered the opinion of the court.

At its May term, 1883, the circuit court of Botetourt county appointed commissioners to partition a farm, known as "Spring-wood," among the four coparceners entitled thereto, one of whom was William J. Penn. At a subsequent term of the court, the commissioners thus appointed made their report of partition, which was confirmed without exception; and, it appearing that the creditors of William J. Penn had liens binding upon his share, the court directed John J. Allen, who was appointed a commissioner for that purpose, to sell the part allotted to him, unless the liens upon it should be paid within 60 days, and report his proceedings to the court. Under this decree this share was exposed to sale, and Martha D. Penn, the wife of William J. Penn, became the purchaser thereof, at the sum of $3,200. This report of sale was dated June 9, 1884, and was duly confirmed. It appears, further, that the pur-.chaser paid the whole of the purchase money; and on the 14th of June, 1890, the commissioner of sale, John J. Allen, conveyed the tract to Mrs. Martha D. Penn, by a deed with special warranty. On the 15th of January, 1885, William J. Penn and Martha D., his wife, .conveyed to the Richmond & Alleghany Railroad Company, its successors and assigns, a certain spring and water right on the lands thus purchased, situated at a point where the railroad company had previously erected a water tank, together with the land over which the water passed from the spring to the tank, and the land on which the tank was erected, with the right to the company to enter at all times upon the land of the grantors for the purpose of laying pipes, digging ditches, and providing means of conveying water to said tank; but it was further provided that this conveyance should extinguish any claim upon the part of the grantors for any past rents that might have been due for the

Va Dec—15

use of the water. The consideration named in this deed is $500, $250 of which was paid in cash, and the balance of $250 was to be paid when the sale should have been reported and confirmed by the circuit court. It will appear from these proceedings that Mrs. Penn was vested with a title in fee to the land purchased by her under the partition proceedings; that she has paid the entire purchase money to the court; that she has received a deed for it; that in the meantime she had conveyed a portion of it to the Richmond & Alleghany Railroad Company, by a deed with general warranty, which now inures to the benefit of her grantee, and establishes its title. It does not appear in the whole course of these proceedings, in the decree for partition, in the decree of sale, in the report of the commissioner of sale, or in the deed subsequently executed by the commissioner of sale, that there is a reservation of any right or interest whatsoever to the share assigned to William J. Penn and purchased by his wife, but the proceedings show that she took a fee-simple interest in the property, free from any claim or cloud whatsoever, unless the proceedings to which we are now about to advert have had the effect of divesting her of some part of this property.

At the May term, 1888, of the circuit court, R. H. Penn, assignee of George S. Penn, one of the original coparceners of the Springwood estate, filed a petition, in which he sets out that upon the Springwood property, prior to its division, two locks of cut stone had been erected, formerly the property of the James River & Kanawha Canal Company, but which had passed to the Richmond & Alleghany Railroad Company, and that one of those locks was upon the part assigned to the petitioner, and the other upon that part assigned to Mayo and wife; that this cut stone had been used by the railroad company, and the proceeds distributed among all the coparceners, and not alone to those upon whose shares the locks stood. The petition then points out that the railroad company had erected a tank prior to the division of the estate, and was

using certain valuable water privileges, for which $500 would be an adequate price, which, in his opinion, should also be divided among the coparceners, as were the damages derived from the sale of the rock, although it chanced that the tank, spring, and water fixtures were wholly upon the share assigned to William J. Penn. To this petition, Mrs. Martha D. Penn and her husband and the other coparceners were named as parties defendant. It does not appear that process was ever served upon them, but all of them, Mrs. Martha D. Penn included, seem to have participated in the taking of depositions, to have examined witnesses, and to have filed exceptions. The commissioner to whom this matter was reported concurred with the petitioner in his view of his rights, and he reported accordingly, and the circuit court confirmed the report, ascertained that the rights enjoyed by the railroad company were worth $500, and decreed a recovery in favor of each of the four coparceners for $125, assigning the share of William J. Penn to J. H. H. Figgat, as receiver for his creditors. The effect of this action was to take from Mrs. Martha D. Penn a portion of the property which had been purchased by her. The theory upon which the court acted was that it was applying to this share the same rule of decision which had controlled it in the distribution of the price received from the railroad company for the cut stones used by it. In this conclusion, we think, the court was taken prior to the division. It was cut stone, which had been quarried, was personal property, and constituted no part of the freehold. On the other hand, the right which the railroad company sought to acquire, and which it did acquire under the deed from Mrs. Martha D. Penn, vested in the Richmond & Alleghany Railroad Company and the appellee, the Chesapeake & Ohio Railway Company, which is its successor, a part of the freehold,—the land itself, which Mrs. Penn had purchased, paid for, and which had been conveyed to her under the partition proceedings heretofore adverted to. The case, therefore, of the

damages for the rock, stands upon a wholly different footing from the subject-matter which we are investigating.

There was nothing to put the purchaser upon inquiry. There is not a word, as we have seen, in the decree for partition, in the report made under that decree, or in the deed which was the final consummation of those proceedings, and which vested the title in Mrs. Penn, which gave her any notice of any such claim as is now asserted, or which could have put her upon inquiry leading to the knowledge of any such claim. It is true that the Richmond & Alleghany Railroad Company had erected a tank upon that property; that it was drawing water to supply that tank from a spring situated upon this property; but it was not claiming title adverse to her or to those under whom she claimed. On the contrary, while the exact nature of its holding is not set out, it sufficiently appears that it was not hostile, but permissive, and that it was in the enjoyment of these rights by the sufferance of those to whom the land belonged. Accordingly, we find it negotiating with Mrs. Penn for the purchase of this property, becoming the purchaser of it from her, paying to her one-half of the purchase money, and binding itself to pay to her the residue as soon as the title could be made by the court. That title has been made by the court, not to the railroad company, but to the grantor of the railroad company, which, upon familiar principles of law, inures to its benefit. It seems clear, therefore, that the decree of the circuit court of the 31st of May, 1889, which undertook to divest to some extent the rights which Mrs. Martha D. Penn had thus acquired, was erroneous.

We think, further, that Mrs. Penn was a party to the proceedings that culminated in that decree; and the only remaining inquiry, then, is how far her rights have been compromised by it. On the 1st day of June, 1892, Mrs. Penn filed her petition in this cause, in which she sets out the various transactions which have been recited, and states that the Chesapeake & Ohio Railway Company, the successor to the Richmond & Al-

leghany Railroad Company, not only refuses to pay to her the $250, with interest from January 15, 1885, the balance due under her deed of that date to the company, but that her grantee had instituted an action of covenant on the common-law side of the court, the object of which is to recover back from her the $250 which was paid in cash upon the execution of the deed of January 15, 1885. She prays for an injunction, and that all of the decrees in this cause which in any wise interfere with her rights may be reviewed and reversed. Under this petition, such proceedings were had that on the 2d of November, 1892, the court entered a decree refusing to rehear and reverse the decrees complained of, and dismissing the petition. From that decree Mrs. Penn appealed to this court.

The appellee not only insists upon the correctness of the various decrees of which Mrs. Penn in her petition complains, but takes the position that, right or wrong, they have passed beyond the power of this court, and that any right to review or reverse them is now barred by the statute of limitations. We cannot think that the decree of the May term, 1889, is final. It adjudicates the principles of the cause, and is, under our statute, a decree which may be appealed from, but it is not a final decree. If it is, it leaves the rights of the railroad company in a very unsatisfactory position, as no provision is made by which the title is to be conveyed to it for the property purchased. Not one word is said in that decree with respect to the rights of Mrs. Penn, and we can hardly suppose that the circuit court intended finally to adjudicate the controversy as to her, and, without one word of reference to the partition proceedings, strip her of rights and interests which had thereby become vested in her. The railroad company, having purchased of Mrs. Penn, and paid to her $250, and finding its title, as it believed, imperiled by the proceedings which were taken upon the petition of R. H. Penn, came before the court at its May term, 1891, and asked to rehear and amend the decree of the May term, 1889, and allow it a credit for the sum of $250,

the amount paid to Mrs. Martha D. Penn; but the court, being of opinion that the money was not paid to Mrs. Penn by authority of the court, and that, therefore, the court had nothing to do with it, refused to entertain the motion, and recommitted the case to Commissioner Simmons, to take an additional account of the value of the rock taken from a part of the Springwood tract. In this decree it will be observed that the appellee, the Chesapeake & Ohio Railway Company, the successor of the Richmond & Alleghany Railroad Company, places its construction upon the character of the decree of the May term, 1889, and asks the circuit court to rehear and amend that decree upon its mere motion. This it might with propriety do if the decree of the May term, 1889, was an interlocutory decree; but if, as it now contends, that decree was final, it was as final in May, 1891, as it is at the present day, and as far beyond the reach of correction by any process known to law. We are therefore strengthened in the construction we have placed upon that decree by the opinion entertained of it at that time by those representing the appellee. It is certain that the decree of the May term, 1891, was not a final decree. It decrees "that this case be recommitted to Commissioner Simmons, to take, state, and report an account." All the relief, therefore, to which the court deemed the parties entitled under the pleadings in the case, had not been granted. We are of opinion that there was no final decree in this case adjudicating the rights of Mrs. Martha D. Penn as to the subject-matter of controversy until November 2, 1892. The appeal was granted on the 5th day of January, 1893, and was therefore not barred by the statute.

Upon the whole case, we are of opinion that there was but one sum of $500 in litigation between the parties, and that Mrs. Martha D. Penn, having purchased the share assigned to William J. Penn without notice of any charge thereupon, or of any adverse interest in any person thereto, became the fee-simple owner thereof, and, having sold it to the railroad company, is entitled to receive the purchase price. We are therefore of

opinion that the circuit court should have enjoined the Chesapeake & Ohio Railway Company from prosecuting the action of covenant against Mrs. Penn for the recovery of the $250 paid by it to her on the 15th of January, 1885; and that it should have decreed the payment to her of the $250, with interest from January 15, 1885, which constituted the balance of the purchase price for the tank property.    A decree will therefore be entered in accordance with this opinion, reversing the circuit court of Botetourt county.    But this decree is not to be construed as an affirmance of any matter decided in the case of Guggenheimer v. Penn et al. not arising upon the petition of Mrs. Martha D. Penn filed in said cause on the 1st day of June, 1892, nor as affecting in any way the rights of any party to that suit not now before this court upon this appeal.